693 A.2d 370

Gwendolyn TENNANT

v.

**SHOPPERS FOOD WAREHOUSE MD CORP.**

No. 1314, Sept.Term, 1996.

Court of Special Appeals of Maryland.

May 6, 1997.

A. Palmer Ifill, Washington, DC, for Appellant.

Christopher R. Dunn (DeCaro, Doran, Siciliano, Gallagher, Sonntag & DeBlasis, on the brief), Lanham, for Appellee.

Argued before CATHELL and HOLLANDER, JJ., and ROBERT SWEENEY, Judge (Retired), Specially Assigned.

HOLLANDER, Judge.

Gwendolyn Tennant, appellant, instituted a negligence suit against Shoppers Food Warehouse Md. Corp., appellee, in the Circuit Court for Prince George's County, to recover for injuries appellant sustained when she slipped and fell in appellee's grocery store. After the circuit court granted appellee's motion for summary judgment, appellant timely noted her appeal. She presents the following questions for our review:

I. Whether there was a genuine issue of material fact as to whether the vegetable leaves which according to appellant's testimony were swept in a neat circle were done so and placed there by the appellee, and whether this was the proximate cause of appellant's fall?

II. Whether the empty vegetable box belonging to appellee and which was placed under the counter partially hidden and over which the appellant tripped and fell was placed there by the appellee, and whether this was the proximate cause of appellant's fall?

III. Whether the vegetable leaves on which appellant slipped or the box over which she tripped and fell after slipping or both were the proximate cause of the appellant's fall?

IV. Whether there were genuine issues of material fact in dispute so as to preclude the grant of summary judgment to appellee?

Appellee, in its brief, has framed the issues as follows:

I. Did plaintiff present sufficient evidence that defendant Shoppers Food Warehouse had prior actual or constructive notice of the substance that allegedly caused plaintiff's accident to establish a *prima facie* case of negligence?

II. Whether a box on the floor of a grocery store produce aisle in the position it was in at the time of this incident constitutes an open and obvious condition?

For the reasons discussed below, we conclude that the circuit court erred in granting summary judgment in favor of appellee. Accordingly, we shall reverse the judgment and remand the case to the circuit court for further proceedings.

## Factual Background

On April 4, 1991, at about 3:30 p.m., appellant slipped and fell in front of the cabbage display at the Shoppers Food Warehouse in Takoma Park, Maryland. At her deposition, appellant said that she slipped on a pile of cabbage or spinach leaves that had been swept into a "neat pile." Ms. Tennant explained that she did not fall, because she was able to steady herself by gripping the side of the cabbage case. Thereafter, Ms. Tennant took a step with her right foot, and tripped and fell over an empty box that protruded partially from under the cabbage case.[1] After she fell, appellant claimed that she experienced "excruciating pain." It was later determined that she fractured her right fifth metatarsal, and suffered pelvic and back strain.

At the time of the incident, appellant was with her husband, and they had only been in the store for about five minutes. Appellant described her fall at two points in her deposition. Initially, she said:

[Ms. Tennant]: . . . I entered on the right side and the aisle, and the aisle against the walk [sic] and the middle aisle, the cabbage stall was on the middle aisle, the first middle aisle. I stopped there to pick up a cabbage, I rested my left hand on the little piece of board that's there and reached over to pick up the cabbage and I slipped, tried to balance, and then

---

1. At oral argument, appellant's counsel asserted that Ms. Tennant had completely recovered from slipping on the leaves, and was moving sideways to look at the cabbage when she tripped over the box. Thus, her counsel asserted that the unexpected encounter with the box was the proximate cause of her accident.

my foot slipped against and bumped, slipped against an empty box, spinach box that was there, tripped over it and fell down. The box moved, lost my balance, tripped over it, fell down.

She later recounted the following:

[Ms. Tennant]: No, I didn't [fall down when I slipped on the leaves], I reached, I caught up, made another step to the right and my foot, my foot touched against the box that was there, the box moved suddenly and I lost my balance, tripped over the box.

[Counsel for appellee]: Before you touched the box, when you started to slip were you off balance then?

[Ms. Tennant]: No, because I had caught it [sic].[2]

When asked whether she had seen the leaves before she fell, Ms. Tennant answered, "No." Appellee also asked appellant whether she had seen the box before she fell, and appellant again responded "No." When counsel for appellee inquired whether appellant's view of the box was obstructed, she answered, "No, I was looking at the cabbage bin." After counsel for appellee repeated the question, Ms. Tenant said, "No. I did not expect the box." Moreover, appellant did not know how long either the leaves or the box had been in the position they were in at the time of her fall.

After the accident, appellant contended that two store employees who were in the produce section came to the scene. Ms. Tennant did not know the names of these employees. One employee swept the pile of vegetable leaves under the cabbage display case. The other employee asked Ms. Tennant to get up, but she could not.

Marvin Nash, the store manager, came to the scene shortly thereafter. He took a report of the accident and photographs of the position of the cardboard box. Mr. Nash stated in his deposition that it was a general practice for employees to keep boxes in front of them while working, to discard empty boxes

---

**2.** At various points in the deposition, appellant said she "caught up," *i.e.,* steadied herself, after slipping on the leaves.

when finished, and not to leave empty boxes in the produce section. Mr. Nash had no knowledge whether this policy was a written one. Ms. Tennant testified at the deposition that she heard Mr. Nash tell an employee that he had repeatedly told him not to leave boxes under the produce stall.

Appellee requested a hearing on its summary judgment motion, but the docket entries do not reflect that a hearing was held. Nor did the circuit court issue a memorandum opinion accompanying its order, explicating the reasons for its decision. Both parties generally assert in their briefs the same bases for either the grant or denial of summary judgment that they asserted below.

### Discussion

"In deciding a motion for summary judgment ... the trial court must decide whether there is any genuine dispute as to material facts and, if not, whether either party is entitled to judgment as a matter of law." *Bagwell v. Peninsula Regional Med. Ctr.*, 106 Md.App. 470, 488, 665 A.2d 297 (1995), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996); *see also* Md. Rule 2–501; *Davis v. DiPino*, 337 Md. 642, 655 A.2d 401 (1995); *Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 737–38, 625 A.2d 1005 (1993); *Bits "N" Bytes Computer Supplies, Inc. v. Chesapeake & Potomac Telephone Co.*, 97 Md.App. 557, 576–77, 631 A.2d 485 (1993), *cert. denied*, 333 Md. 385, 635 A.2d 425 (1994); *Seaboard Surety Co. v. Richard F. Kline, Inc.*, 91 Md.App. 236, 242–45, 603 A.2d 1357 (1992). When there is no dispute as to material fact, we review the trial court's decision to determine whether it is legally correct. *Beatty*, 330 Md. at 737, 625 A.2d 1005; *Bagwell*, 106 Md.App. at 488, 665 A.2d 297.

To defeat a motion for summary judgment, the party opposing the motion must present admissible evidence to show the existence of a dispute of material fact. *Bagwell*, 106 Md.App. at 488, 665 A.2d 297; *Commercial Union Ins. Co. v. Porter Hayden*, 97 Md.App. 442, 451, 630 A.2d 261 (1993), *rev'd on other grounds*, 339 Md. 150, 661 A.2d 691 (1995). A party cannot establish the existence of a dispute merely by making

formal denials or general allegations of disputed facts. *Bagwell,* 106 Md.App. at 488, 665 A.2d 297; *Seaboard Surety Co.,* 91 Md.App. at 243, 603 A.2d 1357. Moreover, the evidence offered to show the existence of a dispute of fact must be sufficiently detailed and precise to enable the trial court to make its ruling as to the materiality of the proffered fact. *Beatty,* 330 Md. at 738, 625 A.2d 1005; *Bagwell,* 106 Md.App. at 489, 665 A.2d 297. The party's production of a disputed fact will not bear on the determination of a motion for summary judgment, however, unless that fact is material to the dispute, *i.e.* "a fact that will alter the outcome of the case depending upon how the factfinder resolves the dispute over it." *Bagwell* at 489, 665 A.2d 297; *see also King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985); *Keesling v. State,* 288 Md. 579, 583, 420 A.2d 261 (1980). Additionally, all disputes of fact, as well as all inferences reasonably drawn from the evidence, must be resolved in favor of the non-moving party. *Bagwell,* 106 Md.App. at 488, 665 A.2d 297.

In their briefs and at oral argument, the parties discussed the question of proximate cause; appellant argued that the box caused her to fall, and appellee seemed to claim that the leaves caused the fall. In our view, whether the pile of leaves or the box was the proximate cause of appellant's fall is of no moment for purposes of reviewing the grant of summary judgment. Rather, Appellant's Question IV is dispositive; it asks whether there was a dispute of material fact so as to preclude summary judgment. As amplified, appellant asserts that there is a material factual dispute about whether the employer negligently created a dangerous condition by placing the pile of leaves or the box in the produce aisle of a grocery store.

It is well-settled that the duty of an owner or occupier of land "depends upon the status of the plaintiffs at the time of the accident." *Casper v. Chas. F. Smith & Son, Inc.,* 316 Md. 573, 578, 560 A.2d 1130 (1989). In Maryland, the duty that an owner or occupier of land owes to persons entering onto the land varies according to the visitor's status as an invitee (i.e. a business invitee), a licensee by invitation

(i.e., a social guest), a bare licensee, or a trespasser. *Baltimore Gas & Elec. Co. v. Lane*, 338 Md. 34, 44, 656 A.2d 307 (1995); *Wagner v. Doehring*, 315 Md. 97, 101, 553 A.2d 684 (1989); *Rowley v. Mayor of Baltimore*, 305 Md. 456, 464–65, 505 A.2d 494 (1986). The highest duty is owed to a business invitee, defined as "one invited or permitted to enter another's property for purposes related to the landowner's business." *Casper v. Chas. F. Smith & Son, Inc.*, 71 Md.App. 445, 457, 526 A.2d 87 (1987), *aff'd,* 316 Md. 573, 560 A.2d 1130 (1989). *See Lane,* 338 Md. at 44, 656 A.2d 307; *Howard County Bd. of Educ. v. Cheyne,* 99 Md.App. 150, 155, 636 A.2d 22 (1994), *cert. denied,* 335 Md. 81, 642 A.2d 192 (1994).

Nevertheless, an owner or occupier of land only has a duty to exercise reasonable care to "protect the invitee from injury caused by an unreasonable risk" that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care. *Casper,* 316 Md. at 582, 560 A.2d 1130; *see Lane,* 338 Md. at 44, 656 A.2d 307 (stating owner owes "a duty of ordinary care to keep the property safe for the invitee."); *Evans v. Hot Shoppes, Inc.,* 223 Md. 235, 239, 164 A.2d 273 (1960); *Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 355, 517 A.2d 1122 (1986). The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers.

> The occupier must not only use care not to injure the visitor by negligent activities, and warn him of hidden dangers known to the occupier, but he must also act reasonably to inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use of the property.

W. Page Keeton, *et. al.,* PROSSER AND KEETON ON THE LAW OF TORTS, § 61, at 425–26 (5th ed.1984) (footnotes omitted).

In *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 117, 113 A.2d 405 (1955), the Court of Appeals expressed these principles when it said:

It is an accepted statement of law that a possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (1) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (2) has no reason to believe that they will discover the condition or realize the risk involved therein, and (3) invites or permits them to enter or remain upon the land without exercising reasonable care to make the condition reasonably safe, or to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility.

 Although the business invitor has a duty to protect against unreasonably dangerous conditions, the business invitor is not an insurer of the invitee's safety. *Moulden v. Greenbelt Consumer Services, Inc.*, 239 Md. 229, 232, 210 A.2d 724 (1965); *Lexington Market Authority v. Zappala*, 233 Md. 444, 446, 197 A.2d 147 (1964). Like the owner, the invitee has a duty to exercise due care for his or her own safety. This includes the duty to look and see what is around the invitee. Accordingly, the owner or occupier of land ordinarily has no duty to warn an invitee of an open, obvious, and present danger. *Casper*, 316 Md. at 582, 560 A.2d 1130. Moreover, "the burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence." *Zappala*, 233 Md. at 446, 197 A.2d 147.

[T]here is no liability for harm resulting from conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care. The mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of

such duration that the jury may reasonably conclude that due care would have discovered it.

Keeton, *supra,* § 61, at 426 (footnotes omitted).

In the context of dangers created by third parties or other patrons of a business, *Zappala,* 233 Md. 444, 197 A.2d 147, is instructive. There, the plaintiff sustained injuries from falling on oil or grease that she did not see on the pavement of a parking garage. The plaintiff did not allege that the defendant itself created the condition, however. The Court noted that the parking garage owner had a duty to inspect, but indicated that there was no evidence of how long the spill had been there. Since the oil or grease could have leaked from another customer's car moments before the plaintiff returned to her vehicle, negligence was not established. The Court said, "it would be unreasonable to hold that it is [the garage owner's] duty to continuously inspect and sand down any and all leakage as soon as it occurs...." *Id.* at 446, 197 A.2d 147.

In contrast to *Zappala,* this case does not focus on the duty to inspect for hazards created by third parties. Rather, appellant has alleged affirmative acts by appellee, consisting of sweeping refuse into a pile on the floor and leaving it there, and placing an empty box partially under, and in front of, a produce display case. Appellee counters that the dangers, if any, were foreseeable, open, and obvious, and therefore it is not liable as a matter of law. Therefore, we must consider whether it was for the jury to determine whether appellee was negligent, as well as the reasonableness of appellant's conduct in failing to appreciate any danger created by the leaves or the box.

The case of *Chalmers v. Great Atlantic & Pacific Tea Company,* 172 Md. 552, 192 A. 419 (1937) provides some guidance to us. There, after stepping away from the meat counter in a grocery store, the plaintiff slipped and fell over a display box. Appellee correctly cites the following language from the case, in which the Court recognized the duty of the patron to expect certain obstacles in a grocery store.

Boxes, cartons, crates, and bags are commonly found in grocery and provision stores, placed in a more or less disorderly way about the store, without relation to any definite system of arrangement or purpose, except perhaps convenient access to their contents. Visitors to such a store must expect to find and to guard against those conditions, because they are an ordinary and usual incident of the business. One is not required to conduct an ordinary and lawful business at his peril merely because persons visiting his premises for business purposes may be injured by conditions commonly incident to the business, when they could have avoided the danger by exercising the degree of vigilance which the conditions required. If one enters a store where he must reasonably expect to find boxes, bags, or other like obstructions, placed irregularly here and there on the floor, he must look for them, and if he does not look, and falls over such an obstruction because he did not look, he cannot complain.

*Id.* at 555, 192 A. 419.

From this language, appellee contends that, as a matter of law, it is not liable, because the conditions involved here were foreseeable as well as open and obvious. As we have noted, a business invitor ordinarily has no liability for injuries caused by open and obvious dangers encountered by business invitees who must, in the exercise of due care for their own safety, look out for such dangers. This protection, however, does not necessarily insulate appellee from liability. Appellee omitted reference to the following explication by the Court of the duty of the business invitor:

[I]t would seem that, even in a grocery and provision store, where the articles offered for sale are irregularly placed about the floor, since it is intended that purchasers will inspect and select such articles as they desire to purchase from those offered for sale, the owner is under a duty to provide reasonably safe passageways to afford access to different parts of the store, where customers are expected to go.

\* \* \* \* \* \*

The storekeeper expects and intends that his customers shall look not at the floor but at the goods which he displays to attract their attention and which he hopes they will buy. He at least ought not to complain, if they look at the goods displayed instead of at the floor to discover possible pitfalls, obstructions, or other dangers, or if their purchases so encumber them as to prevent them from seeing dangers which might otherwise be apparent. Patrons are entitled therefore to rely to some extent at least upon the presumption that the proprietor will see that the passage ways provided for their use are unobstructed and reasonably safe.

*Chalmers,* 172 Md. at 556, 559, 192 A. 419.

Accordingly, the Court in *Chalmers* reversed a directed verdict in favor of the defendant. What the Court said is particularly apt here: "Whether under the circumstances its conduct in placing the box in the aisle, or permitting it to remain there, was consistent with due care, was peculiarly a jury question." *Id.* at 558, 192 A. 419.

Similarly, the case of *Diffendal v. Kash & Karry Service Corp.,* 74 Md.App. 170, 536 A.2d 1175 (1988), supports appellant's contention that the trial court erred. There, the customer tripped and fell over an "L-bed cart" in the frozen food aisle of a grocery store. With respect to the question of contributory negligence, we relied on *Chalmers* and cited with approval the following language from *Borsa v. Great Atlantic and Pacific Tea Co.* 207 Pa.Super. 63, 215 A.2d 289 (1965):

"The standard of care applicable to a customer in a store is not as high as that imposed upon a pedestrian on a sidewalk. In determining whether a business visitor's failure to observe a dangerous condition on the premises constitutes negligent inattention, the fact that the possessor of the premises has eyecatching objects on display which divert the visitor's attention is an important factor for consideration. In view of the fact that there were displays all around the area in which [the plaintiff] fell ... we cannot say as a matter of law that [she] failed to exercise due care for her own protection. *Whether or not she was using the*

*caution expected of a reasonably prudent person under the circumstances was a question of fact for the jury and not of law for the court."*

*Diffendal,* 74 Md.App. at 175, 536 A.2d 1175 (quoting *Borsa,* 207 Pa.Super. at 69, 215 A.2d at 292–93) (emphasis in *Diffendal* ). Accordingly, we vacated the summary judgment entered in favor of the store, stating: "We see a distinction between the failure to see a man, at eye level who is clearly visible, and the failure to see an L–cart, which rests inches off the ground." *Id.* at 178, 536 A.2d 1175 (citations omitted).

Prosser is entirely consistent with this view.

[I]n the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent that he may reasonably be expected to discover them.... In any case where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, *where there is reason to expect that the invitee's attention will be distracted, as by goods on display,* or that after a lapse of time he may forget the existence of the condition, even though he has discovered it or been warned; *or where the condition is one which would not reasonably be expected, and for some reason, such as an arm full of bundles, it may be anticipated that the visitor will not be looking for it.*

Keeton, *supra,* § 61, at 427 (footnotes omitted; emphasis supplied).

In light of the above discussion, appellee's reliance on *Moulden* is misplaced. In *Moulden,* the plaintiff slipped on a string bean in an aisle of a grocery store as she was looking at a cookie display. The Court upheld a directed verdict in favor of the store owner, stating:

"There being no evidence as to how long the bean had been on the floor, and it being possible that another customer may have dropped it just before appellant stepped on it, any

finding by a jury that the employees of the store saw the bean or should have seen it in time to remove it or warn appellant, would rest on pure conjecture and not on reasonable inference."

*Moulden*, 239 Md. at 233, 210 A.2d 724 (quoting *Orum v. Safeway Stores, Inc.*, 138 A.2d 665 (D.C.Mun.App.1958)). The Court reasoned that the owner is not an insurer and, because there was no evidence that the store had notice of the dangerous string bean, "it would be unreasonable to hold that it is [the store's] duty to conduct a continuous inspection tour of the store." *Moulden*, 239 Md. at 233, 210 A.2d 724.

*Moulden*, like *Zappala*, suggests that the notice issue generally arises when the dangerous condition is created by a third party. Usually, in such cases, the plaintiff claims that the defendant has breached its duty to inspect for dangers created by third parties, including other invitees. These cases are not persuasive in this matter; in contrast to *Moulden*, notice is not an issue at this juncture. Viewing the factual assertions in the light most favorable to appellant, appellee had actual or constructive knowledge of the dangers created by the leaves or the box; appellant claimed that the vegetable leaves were swept into a "neat pile," and the box was left under the produce display. It follows, at least by inference, that appellee's own employee(s) knew what had been done in sweeping the refuse into a pile and leaving it, and in placing the empty box under the display case.

We do not suggest, however, that an owner is always deemed on notice with respect to any act of its employee. If a store employee were, for example, *unwittingly* to drop some grapes on the floor, causing a hazard to a shopper, *Moulden* may well control. In that situation, it would not necessarily matter whether it was another customer or an employee who had *unknowingly* dropped the fruit. When an employee or another invitee unknowingly creates a dangerous condition the focus may shift to the owner's duty to inspect.

██ Based on the factual allegations present here, we conclude that it is for the jury to decide whether, in the first

instance, appellee created a dangerous situation, about which it knew or should have known. If so, the jury must also determine if appellant negligently failed to appreciate the unsafe conditions. Whether appellant exercised the degree of care " 'expected of a reasonably prudent person under the circumstances was a question of fact for the jury and not of law for the Court.' " *Diffendal,* 74 Md.App. at 175, 536 A.2d 1175 (quoting *Borsa,* 215 A.2d at 292–93). In this regard, the jury would be entitled to consider whether appellant's attention was reasonably focused on selecting produce that was on display. "A reasonable inference is that an ordinarily prudent person, while shopping in a supermarket, with her attention drawn to the selection of merchandise displayed ... could make [an] error of judgment, and trip over [an object] placed in an aisle near the displays of merchandise." *Diffendal,* 74 Md.App. at 176, 536 A.2d 1175. Because the trial court invaded the province of the jury, we must reverse.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**APPELLEE TO PAY COSTS.**