**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 09-1039**

———————

CHARLES WILLIAM COLEMAN,

            Plaintiff - Appellant,

      v.

UNITED STATES OF AMERICA; SHADE TREE LAWN CARE,
INCORPORATED,

            Defendants - Appellees.

———————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Susan K. Gauvey, Magistrate Judge.
(1:07-cv-01711-SKG)

———————

Argued: January 28, 2010                Decided: March 10, 2010

———————

Before MICHAEL and DUNCAN, Circuit Judges, and R. Bryan HARWELL,
United States District Judge for the District of South Carolina,
sitting by designation.

———————

Affirmed by unpublished opinion.    Judge  Harwell  wrote  the
opinion, in which Judge Michael and Judge Duncan joined.

———————

**ARGUED:**  Mark  Robert  Millstein,  Baltimore,  Maryland,  for
Appellant.   Alex Gordon, OFFICE OF THE UNITED STATES ATTORNEY,
Baltimore,  Maryland;  G.  Randall  Whittenberger,  MILES  &
STOCKBRIDGE, Frederick, Maryland, for Appellees.  **ON  BRIEF:**
David M. Silbiger, Baltimore, Maryland, for Appellant.   Rod J.
Rosenstein,  United  States  Attorney,  Baltimore,  Maryland,  for
Appellee United States of America.

———————

Unpublished opinions are not binding precedent in this circuit.

HARWELL, District Judge:

This appeal concerns a negligence case brought under the Federal Tort Claims Act ("FTCA") against Defendants United States of America ("USA") and Shade Tree Lawn Care, Inc. ("Shade Tree") for injuries Charles William Coleman ("Coleman") suffered in a slip-and-fall on postal property. Coleman filed this case in the United States District Court for the District of Maryland on June 28, 2007. On December 2, 2008, United States Magistrate Judge Susan K. Gauvey granted summary judgment in favor of the defendants. For the following reasons, we affirm.

I.

On May 17, 2006, Coleman drove to the Damascus Post Office ("Post Office") as he had done on a weekly basis for several years. It was a clear day around mid-morning. Coleman exited his vehicle and noticed a Shade Tree employee mulching by the sidewalk; but otherwise, the path before him appeared clear. He entered the Post Office, conducted his business, exited the Post Office, and proceeded down the sidewalk. According to his deposition, he was not looking down at the sidewalk as he walked, but rather was looking ahead towards his vehicle while scanning the area approximately every six to eight seconds to make sure that his path was free of obstacles.

3

Coleman eventually reached an area on the sidewalk where the Shade Tree employee was mulching and stepped down with his left foot on something foreign to the sidewalk. The foreign object was hard, "bigger than a pea," and caused Coleman to lose his balance. After stumbling on the sidewalk, he tried to regain his balance and placed his right foot into the parking lot at a location where the sidewalk becomes a concrete access ramp, connecting the parking lot to the sidewalk. Debris had accumulated in the parking lot at the bottom of the access ramp, and when Coleman stepped down with his right foot, the debris allegedly prevented him from regaining his balance and he fell. X-rays revealed that Coleman suffered a broken right wrist as a result of the fall.

The debris at issue consisted of remnants of a gravel-sandstone-pebble mixture, which was spread throughout the parking lot approximately eight weeks prior to Coleman's fall to help cars with traction due to heavy snow and ice conditions. Coleman had seen the debris on his prior regular weekly visits to the Post Office, but he had not noticed the debris when entering or exiting the Post Office on the day of his fall.

## II.

We review a district court's grant of a motion for summary judgment de novo, applying the same legal standards as the

4

district court. Nader v. Blair, 549 F.3d 953, 958 (4th Cir. 2008). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Thus, summary judgment is appropriate when it is clear that no genuine issue of material fact remains unresolved and an inquiry into the facts is unnecessary to clarify the application of the law. Haavistola v. Cmty. Fire Co. of Rising Sun, 6 F.3d 211, 214 (4th Cir. 1993).

The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. See Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, "[t]he burden then shifts to the

5

non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19. Moreover, "the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 875 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. See id. When the nonmoving party fails to establish the existence of an element essential to that party's case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 323.

## III.

The Court first addresses whether Defendant USA was negligent pursuant to Coleman's claim brought under the FTCA. The FTCA is a procedural statute that requires that the Court look to the place of the act or omission to determine the applicable substantive law. Richards v. United States, 369 U.S. 1, 11-14 (1962). Specifically, 28 U.S.C. § 1346(b)(1) (2006) provides:

6

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions [for] personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Since the incident in question occurred in Maryland, then Maryland substantive law applies. Thus, we are required to follow Maryland law.

To establish a prima facie case for negligence under Maryland law, Coleman must prove: (1) the defendant owed a duty to protect Coleman from injury; (2) the defendant breached that duty; (3) causation; and (4) damages. See Rosenblatt v. Exxon Co., U.S.A., 642 A.2d 180, 188 (Md. 1994). More specifically, to prove liability by the USA as a landowner in a premises liability/slip-and-fall case, Coleman must provide evidence establishing: (1) a dangerous condition existed; (2) USA had actual or constructive knowledge of it; and (3) such knowledge was gained in sufficient time to give USA the opportunity to remove it or to warn Coleman. See Maans v. Giant of Maryland, LLC, 871 A.2d 627, 632 (Md. Ct. Spec. App. 2005).

Under Maryland law, a landowner has the duty to protect pedestrians "not from the customary, permissible uses and conditions, but dangers of a kind that would not be expected by foot travelers, dangers in the nature of traps." Leatherwood

7

Motor Coach Tours Corp. v. Nathan, 579 A.2d 797, 803 (Md. Ct. Spec. App. 1990) (internal quotation marks omitted). As such, an "unevenness of the ground surface" containing gravel "pose[s] no 'unreasonable risk' to" a pedestrian because "pedestrians are bound to protect themselves from ordinary uses, obstructions, and comparative roughness of the ground." Id. In Leatherwood, the court held that the plaintiff failed to prove that a dangerous condition existed where, "[a]s a result of normal erosion, the dirt shoulder adjacent to the paved highway became uneven and gravel was added"; the court found that gravel and rocks are to be expected by foot travelers in such a location and, therefore, do not create a dangerous condition. Id. (finding that the existence of gravel was "slight and trivial").[1]

Moreover, it is well established under Maryland Law that an invitee who is harmed by an open and obvious condition is ordinarily not entitled to any recovery for his injuries. See, e.g., Casper v. Charles F. Smith & Son, Inc., 560 A.2d 1130, 1134-37 (Md. 1989). This is because an invitor is not an insurer of the invitee's safety. Tennant v. Shoppers Food Warehouse, 693 A.2d 370, 374 (Md. Ct. Spec. App. 1997) (citations omitted). Like the invitor, "the invitee has a duty

---

[1] Cf. Landers v. Aldi, Inc., 153 F.3d 698, 699 (8th Cir. 1998) ("[L]oose stones in a parking lot pose only a minimal danger to the general public . . . .").

8

to exercise due care for his or her own safety. This includes the duty to look and see what is around the invitee. Accordingly, the owner or occupier of land ordinarily has no duty to warn an invitee of an open, obvious, and present danger." Id. (citing Casper, 560 A.2d at 1130).

"An 'open and obvious condition' is where the condition and risk are apparent to and would be recognized by a reasonable person in the position of a visitor, exercising ordinary perception, intelligence, and judgment." 65A C.J.S. Negligence § 639 (West 2009). Under Maryland law, because a mixture of rock salt and gravel "is often used as a precautionary measure to assist pedestrians" and can easily be seen by pedestrians, its use will not necessarily constitute negligence. Kaplan v. Baltimore & Ohio R.R. Co., 113 A.2d 415, 418 (Md. 1955) ("[O]n that morning the temperature was above freezing, and there was no rock salt or gravel on the steps, and in fact no need for it on that day. But even assuming, as we must, that there was some rock salt or gravel on the steps, plaintiff could easily have seen it.").

A.

Coleman asserts that the accumulated debris in the parking lot where the sidewalk becomes a concrete access ramp created a dangerous condition. In the instant matter, the alleged dangerous condition is debris consisting of remnants of a

9

gravel-sandstone-pebble mixture, which was spread throughout the Post Office parking lot. Such a mixture is often used as a precautionary measure to assist motorists and pedestrians, and gravel-type debris is innate to parking lots. Under Leatherwood, it is questionable whether the debris at issue here could even be considered a dangerous condition.

B.

Even assuming, arguendo, that this debris did constitute a dangerous condition, it was nonetheless an open and obvious condition. The determination of whether a condition is open and obvious so that an invitee is charged with knowledge of its existence and consents to any risk is made by the court on a case-by-case basis. See Gellerman v. Shawan Rd. Hotel Ltd. P'ship, 5 F. Supp. 2d 351, 353 (D. Md. 1998) (applying Maryland law). Notably, the circumstances in the instant matter closely mirror those in Gellerman. There, the plaintiff "tripped in close proximity to an uneven curb/sidewalk joint and fell to the ground while walking through the parking lot of a hotel." Id. at 352. The court granted summary judgment, holding that the condition of the sidewalk was open and obvious because the layout "provided wholly unobstructed views in all directions from plaintiffs' vantage point." Id. at 354. The court further noted that the circumstances of the accident demonstrated that the plaintiff- as with Coleman in the instant matter- had no

10

reason not to discover the open and obvious condition. As a result, the court held that the plaintiff could not recover for her damages under Maryland law.

In the instant matter, there was nothing to impede Coleman's ability to notice the remnants of the gravel-sandstone-pebble mixture on the day of the slip-and-fall. He was in good health and described the day as "very nice . . . [s]unny, clear, cool, comfortable." It cannot be overstated that Coleman was also very familiar with the Post Office, as he had visited it at least once or twice a week for the past eight years. Significantly, he admitted in his deposition that, on prior visits to the Post Office, he had noticed the debris on which he slipped and fell. The fact that Coleman had noticed the debris on his regular weekly previous visits to the Post Office is evidence that the debris was an "open and obvious condition" and that he knew of the risks, if any, posed by the debris. See Leatherwood, 579 A.2d at 803 ("[W]hatever risk the uneven ground surface of the shoulder posed to pedestrians or prospective bus riders was well known to appellee. She had walked on it many times . . . .").[2] As such, the open and

---

[2] Accord Landers, 153 F.3d at 700 ("Because Landers acknowledges that she had seen the stones around the parking lot on previous visits to the strip mall . . . she admits that the stones posed an open and obvious danger, and that she herself knew of the risk.").

11

obvious nature of the risk, if any, posed by the debris negated USA's duty to warn or protect Coleman against it.

## IV.

The Court next addresses whether Shade Tree was negligent. Shade Tree, as an independent contractor, is held to the same standard of ordinary care that USA is held to as a possessor of land. See Restatement (Second) of Torts § 383 (1965) ("One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability . . . for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.").

## A.

As mentioned above, Coleman claims that USA failed to clean up the gravel-sandstone-pebble mixture, and remnants of this debris had accumulated throughout the parking lot creating a dangerous condition. According to Coleman, it was this dangerous condition that caused his fall. The contract between Shade Tree and the Post Office provided that Shade Tree was responsible for "[g]eneral yard clean up," which consisted of the grounds between the curb and the building. However, Shade Tree did not contract and had no responsibility to maintain the Post Office parking lot area where Coleman fell, and counsel for Coleman conceded as much at oral argument. In addition, the

12

general principles of Maryland law articulated above with regard to USA's liability apply to Coleman's negligence claim against Shade Tree as well. As such, Shade Tree owed no duty to Coleman concerning the debris in the parking lot, which purportedly caused Coleman's fall, and is entitled to summary judgment as a matter of law.

## V.

While the Court is sympathetic to Coleman's situation, Maryland law creates a high burden in premises liability/slip-and-fall cases. Applying Maryland law to the undisputed facts in this case, the district court's granting of summary judgment was correct as to each defendant. For the reasons provided herein, the judgment of the district court is affirmed.

<u>AFFIRMED</u>